[See 3 Fed. 496.]

HOOPER (FELCH v.). See Cases Nos. 4,-717 and 4,718.

## Case No. 6,674.

### HOOPER et al. v. FIFTY-ONE CASKS OF BRANDY.

[2 Ware (Dav. 370) 371; [1] 6 N. Y. Leg. Obs. 302.]

District Court, D. Maine. Dec. Term, 1848.

CUSTOMS—SEIZURE—SHARE OF FORFEITURE—IN-SPECTOR—RIGHTS OF—EMOLUMENTS.

1. Inspectors of the customs are public officers, and not the mere servants and agents of the collector.

2. Where a seizure is made by a collector under the collection act, March 2, 1799 [1 Stat. 627], in pursuance of information given by an inspector of the customs, the inspector is entitled to the informer's share of the forfeiture.

[Cited in Fifty Thousand Cigars, Case No. 4,782; U. S. v. George, Id. 15,197; U. S. v. One Hundred Barrels of Distilled Spirits, Id. 15,946; Four Cutting Machines, Id. 4,987; U. S. v. Chassell, Id. 14,789.]

3. No officer of the customs is debarred from receiving a distributive share of fines, penalties, and forfeitures, by the act of February 11, 1846, c. 7 [9 Stat. 3], allowed by previous laws, in consequence of having received his maximum of compensation allowed by law.

[Cited in Sprague v. West, Case No. 13,255.]

4. What is received by the officers of the customs for forfeitures, constitutes no part of the emoluments to which the limitation of the maximum is applied.

This was a petition of John K. Hooper and Nathaniel Shaw, claiming the informer's share in the proceeds of the sale of fifty-one casks of brandy, seized by the collector of Portland, and condemned as forfeited to the United States. It is alleged in the petition that, on the 27th of January, they found the brandy secreted in various warehouses in town, and suspecting it to have been illicitly imported took it into their possession, and on the same day gave the collector information; and that in pursuance of the information the seizure was made, and such proceedings were thereupon had, that the brandy was condemned as forfeited, and sold, and the proceeds paid into the registry, for having been landed without a permit, in violation of the 50th section of the collection law of March, 1799. The answer of the collector and surveyor, admits the facts stated in the petition, but denies that the petitioners are entitled to the informer's share, because they were at the time inspectors of the revenue, in the employment of the United States, and had received the full amount of the maximum of their compensation allowed by law. To this answer the petitioners put in a general demurrer.

Mr. Haines, for petitioner.

S. J. Anderson, for respondents.

WARE, District Judge. The proceeds of the forfeiture having been paid into the reg-

[1] [Reported by Edward H. Daveis, Esq.]

istry, there is no doubt that the court has the authority to determine to whom they belong, and to order the money to be paid out to those who are legally entitled to receive it. Westcott v. Bradford [Case No. 17,429]; The Langdon Cheves [Id. 8,064]; U. S. v. La Jeune Eugenie [Id. 15,551]. It is an authority that results to the court as an incident to its possession of the principal cause. McLane v. U. S., 6 Pet. [31 U. S.] 404. The petitioners claim the informer's share of the forfeiture, under the general collection law of March 2, 1799. The 91st section of that act provides, that all fines, penalties, and forfeitures, recovered by virtue of this act, shall be disposed of as follows, one moiety to the United States and the other to be divided between the collector, naval officer, and surveyor, in equal shares, or among such of these officers as may be in the district. Then follows a proviso in these words, under which the petitioners claim: "In all cases when such penalties, fines, and forfeitures shall be recovered in pursuance of information given to such collector, by any person other than the naval officer, or surveyor of the district, the one-half of such moiety (that is, of the officer's) shall be given to such informer, and the remainder thereof shall be disposed of between the collector, naval officer, and surveyor, in manner aforesaid." The answer admits that the seizure was made and proceedings instituted in pursuance of the information communicated by the petitioners, which resulted in a decree of forfeiture. The only question presented by the demurrer is, whether the petitioners are precluded from claiming as informers, on account of their being at the time inspectors of the customs. The language of the proviso is so plain that, had I not been informed at the argument that a different construction is put on the act, by the officers of the treasury department at Washington, I should not have supposed their right would admit of doubt. They cannot be included under the exception of naval officers, and surveyors, and when the information, in pursuance of which a forfeiture is recovered, comes from any other person, he is entitled to the informer's share. On what ground, then, can they be debarred from a claim which is open to every other person except the naval officer and surveyor?

It is true, as was suggested at the bar, that the inspectors are employed for the special purpose of preventing frauds on the revenue, and that in seizing smuggled goods, and communicating information of violations of the laws, they are only in the performance of their ordinary duties for which they receive a regular stipend. The argument is, that being thus paid, it is not to be presumed that an additional compensation is provided by law for services for which they are already fully paid. Certainly the courts can make no such presumption; but

the inquiry is, whether the legislature has not offered them additional reward. It may be remarked that if this were a sufficient reason to exclude them from an extra reward, the same objection might be made to the claim of any other revenue officer. All are equally bound for all vigilance in protecting the revenue against frauds, and receive the regular emoluments attached to their offices, which are deemed an adequate compensation for their services. No presumption, therefore, arises from this circumstance, if they come fairly within the words of the law. But the enforcing of fines and forfeitures is always attended with more or less odium, and sometimes with danger, and though every man is supposed to be ready to do his whole duty, the legislature has thought it expedient to stimulate the activity and quicken the diligence of the revenue officers in doing what is sometimes an ungrateful service, by offering them a share in the forfeitures, which are recovered by their agency. The motive is to insure a more perfect execution of the fiscal laws, an object not only important to the government, but to every fair and correct merchant, who pays duties on his own importations; and it may be added, to the general morals of the community. There is scarcely anything more corrupting to the morals and industrious habits of a people than the practice of smuggling. It diverts men from the pursuits of regular industry, by the prospects of easily acquired illicit gains, and the transition from bold and desperate smuggling, to the more atrocious crimes of robbery and murder, has been found, by the experience of all nations, both natural and easy, and not very unfrequent. If the diligence of any officers of the revenue is to be encouraged by the offer of extra rewards, to whom would the offers be more naturally made than to the inspectors? They constitute the principal preventive police of the customs. They are employed for the express purpose of preventing and detecting frauds. They are the out-door guard, patrolling the streets, visiting the wharves and traversing the waters of the harbor, while the collector, naval officer, and surveyor, by the nature of their duties, are confined to their bureaus within doors. If extra vigilance and fidelity are anywhere to be sought by the offer of special rewards it would seem that they could nowhere be offered, where they would be more likely to accomplish the objects of the government than to the inspectors.

Another objection is made to the claim of the petitioners, and to me it seems to be the only one that can overcome the plain words of the statute. If it be well-founded it is a bar to the claim set up in the petition. It is this, that the inspectors are the agents and servants of the other officers, that their acts and information are the acts and information of the collector and surveyor. The collector, it is true, is authorized to em-

ploy inspectors, but not on his sole authority. It is only with "the approbation of the principal officer of the treasury department" that he can employ them. If they were the mere servants of the collector, it is hardly supposable that his nomination would require the confirmation of the secretary of the treasury. Again, the surveyor is authorized to direct and superintend the inspectors, weighers, etc., in the course of their duties. St. 1799, § 91. But this no more makes them the agents and servants of the collector and surveyor, than when any other subordinate officer is placed under the direction and control of his superior. An inspector may seize goods which he suspects to be illegally introduced into the country. If he seizes them without probable cause, the owner may have a remedy for the wrong in an action of trespass. If the collector adopts the seizure, he makes it his own, and he will be liable; but will it be pretended that, if he repudiates it, he will be responsible for the tortious act of an inspector? Yet this consequence will follow if the inspector is the mere servant of the collector. For there is no principle of law more firmly established than that the principal is responsible for the wrongful acts of his agent done within the scope of his agency. Story, Ag. § 542; Domat, Lois Civiles, liv. 1, tit. 16, § 3, No. 1. And yet I hold it to be quite clear that, unless he adopts the seizure of an inspector, he is no more liable for it than the postmaster-general is liable for losses individuals may sustain from the misconduct of his deputies. Dunlop v. Munro, 7 Cranch [11 U. S.] 242; Whitfield v. Lord Le Despencer, Cowp. 754. Inspectors are in fact public officers, commissioned and sworn as such, and are in the employment of the government, and not in the private employment of the collector and surveyor. They are so described in the law (St. March 2, 1799, §§ 39–53, 73) and an indictment will lie under the 71st section of that act, for forcibly resisting an inspector in the execution of his duties as an officer of the customs. U. S. v. Sears [Case No. 16,247]. It is only in a very limited and qualified sense that the inspectors are the agents of the collector and surveyor.

But the act of February 4, 1815, c. 31, § 7 (3 Stat. 198), has been referred to as an act in pari materia, and as giving a legislative construction to the act of 1799. The first remark that occurs on this part of the argument is, that this was a temporary act, passed to meet the emergencies of a state of war, and has long ago expired by its own limitation. It gave to the inspector when he seized goods out of the presence of the collector, twenty-five per cent. of the collector's moiety of the proceeds of the forfeiture. The argument of the counsel is, that, without this provision, the opinion of the legislature was that he would be entitled to no part. The words of the act give this to the inspectors, "in addition to such compensation as may be allowed them;" that is, as I understand the act, in addition to any compensation allowed by law. If it were necessary to give a construction to this obsolete act, that to which my mind would incline is, that when the inspector made a seizure out of the presence of the collector, on information from a private informer, the informer would be entitled to one-half the collector's moiety, this being expressly directed by the act as a reward for the information; and the inspector would be entitled to twenty-five per cent. of the moiety for making the seizure and securing the goods. But if he made the seizure on his own motion and on his own information, that the law did not intend to debar him of any right he had under existing laws to claim as informer, but gave the twenty-five per cent. in addition when the seizure was made out of the presence of the collector, and, of course, on the sole responsibility of the inspector. The reward for giving information was left as it stood before, and this was offered as an additional encouragement to inspectors, to stimulate their diligence and activity at a time when the execution of the laws was attended with much difficulty and some danger. Though this interpretation of the act may be open to some objection, I by no means think that the act of 1815, as a legislative construction of former laws, is so clear against the right of inspectors to claim as informers, as to overcome the plain terms of the act of 1799.

We come now to the principal objection set up to the claim of the petitioners, and I understand that it is mainly for the purpose of having a decision on this, that the present case is brought before the court. If this prevails, it is admitted that it applies as well to the collector and surveyor as to the inspectors. It arises out of the first section of the act of February 11, 1846, c. 7 [9 Stat. 3], which is as follows: "That collectors and all other officers of the customs, serving for a less period than a year, shall not be paid for the entire year, but shall be allowed in no case a greater than a pro rata of the maximum compensation of said officers respectively, for the time only which they actually serve as such collectors or officers, whether the same be under one or more appointments, or before or after confirmation. And no collector or other officer shall receive for his services, either in fees, salary, fines, penalties, forfeitures, or otherwise, for the time he may be in service, beyond the maximum pro rata rate provided by law." The objection to the claims of the petitioners, drawn from this act, is this. They are officers of the customs, and have received the full maximum of their compensation, as established by law, for the whole time they have been employed, and, therefore, under this act, it is argued, they can receive nothing more in the way of compensation, what-

ever may have been their services, whether as shares in fines, penalties, and forfeitures, or otherwise. This act is certainly not of very easy interpretation. I will proceed to state that which, after the best consideration I have been able to give the subject, seems to be the most reasonable; which puts it in harmony with other acts relating to the same subject-matter, and which carries into effect what appears to me to be the real intention of the legislature. In the first place it appears evidently on its face, to be an act supplemental to former acts fixing a limitation to the emoluments of certain officers of the customs. The first of these, and that which lies at the foundation of all which follow, is the act of May 7, 1822 (3 Stat. 693). The ninth and tenth sections of this act establish a maximum of compensation, for certain officers therein described, to be allowed in any one year, but they do not prescribe a maximum for part of a year. The consequence was, that when two or more collectors held the same office for parts of the same year, no limitation being applied to a part, except that which was established for an entire year, each officer might receive and retain, to his own use, the maximum for a full year, if the fees and other emoluments allowed by law amounted, during the period for which he held the office, to a sufficient sum. For all these fees he received, under the existing laws, to his own use, until they amounted to the maximum fixed by the law, and there was no maximum except that for a full year. This construction was given to the law by the courts, and it seems to be the only one that it admits. U. S. v. Pearce [Case No. 16,021]. It is very clear, that the first clause in the third section, does no more than extend the principle of the limitation to a part of a year, which the act of 1822 had established for an entire year. It allows the officer a compensation for a portion of the year, that he has held an office, only in proportion to what he would have had, if he had remained in office a full year, though the fees and emoluments may have amounted to a larger sum; and here it is to be remarked that the limitation, in the act of 1822, applies only to the ordinary emoluments allowed by law. Whenever the emoluments of any collector, etc., exceed the maximum, the excess shall be paid into the treasury. The 11th section expressly excludes from the operation of the law, what the officers may receive from the distribution of fines, penalties, and forfeitures.

The first clause of the act of 1846 does not in its terms, and manifestly is not intended to extend the limitation of the maximum to any other sources of emolument than those to which it was applied by the act of 1822. The whole difficulty grows out of the mention of fines, penalties, and forfeitures in the latter clause. After considerable reflection I have come to the conclusion, that these words have been introduced into the act through inadvertence. And I will now proceed to state the grounds on which this opinion is formed. The true sense intended by the legislature I suppose to be this. In all cases where a maximum of compensation is established for any particular service, or derived from any particular source for an entire year, the officer shall be allowed for that service only a pro rata sum for a part of a year. For instance, the collector is allowed in some districts to receive for his own use a sum not exceeding $6000, derived from fees, commissions, and all other ordinary emoluments, and, if they amount to more, the excess shall be paid into the treasury. This is a limitation of his whole emoluments derived from these sources. But there is a maximum also fixed for a particular class of services. By the act of March 3, 1841 [5 Stat. 432], the collector is directed to render, in his account, a return, 1st, of all sums of money received for fines, penalties, and forfeitures; 2d, of all sums received on account of suits instituted for frauds on the revenue; 3d, of all sums received for rents and storage of goods in public stores, and if it appears that the excess received for storage in any year, above what he pays for store rent, amounts to more than $2000, that excess should be paid over to the treasury. But this act, like that of 1822, fixes no maximum for what he may receive for his distributive share of fines and forfeitures. And the maximum for the excess of storage is fixed only for a year. If, therefore, he was in office for half a year only, and the excess in that time amounted to $2000, as there was no limitation for part of a year, below that which he might receive for a whole year, he might retain the whole for his own use, provided it did not carry up his whole emolument above the limitation fixed by law. Now under this clause of the act of 1846, when the collector is in office but part of a year, his fees and emoluments, for the excess of his receipts of storage, are cut down to a pro rata allowance, that is, to $1000, and this seems to be the proper operation of this clause. It operates distributively, for a part of the year on each and every source of his emoluments to which there is by law a limitation, to reduce them to a pro rata sum. No collector, or other officer, shall be paid for a part of a year, above a pro rata of the maximum for a full year provided by law, that is, established by prior and existing laws. But there is no law establishing a maximum for what a collector, or other officer, may receive for their distributive shares of fines, penalties, and forfeitures, and there can be no pro rata maximum for a part of a year, when there is no maximum for an entire year.

The limitation, in this clause, for a portion of a year, cannot, without doing violence to the language, be extended to any emoluments, to which there was no limitation by existing laws. It is by its own terms expressly confined to a maximum provided by law; that is, most certainly, laws then in

force. If the court were to extend it to emoluments received from fines and forfeitures, it would create a new limitation not known to the existing laws then in force. The whole of the first section, of the act of 1846, applies only to officers who are in office for a period less than a year, and its whole operation (and such is, I think, the manifest intention of the legislature where a maximum had been established by prior laws for an entire year) to extend the principle to the service of part of a year. The second clause of the section, as I understand it, operates distributively, and where there is a maximum fixed by law to an officer's emoluments for any branch of his services, it apportions these for a part of a year as the first clause does the whole. This interpretation of that act, it is admitted, is open to the grave objection that it leaves the words fines, penalties, and forfeitures, nearly unmeaning, and it is one of the fixed rules in the interpretation of statutes, that every word is presumed to have an appropriate office and meaning. The sense in which I understand them is, that no officer shall receive, in his distributive share of fines, penalties, and forfeitures, anything beyond the proportion fixed and allowed by law; that is, it leaves the existing laws without alteration. But with respect to the present case, it might perhaps be sufficient to observe that the petitioners do not claim in their quality as officers of the revenue, but simply as informers, claiming under the law precisely as every other person may, except the naval officers and surveyors.

My opinion is, on the whole, that where a seizure is made by the collector, under the act of March 2, 1799, in pursuance of information given by an inspector, and there is a decree of condemnation, the inspector is entitled to the informer's share. And no officer of the customs is debarred from receiving a distributive share of fines, penalties, and forfeitures, by the act of February 11, 1846, which is allowed by prior acts of congress, in consequence of having received the maximum of his compensation established by law, there being no law establishing a maximum for what an officer may receive as his distributive share of forfeiture.